UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM O'CONNOR,

     Plaintiff,

                                CASE NO. 05-CV-74498-DT
                                JUDGE ROBERT H. CLELAND
                                MAGISTRATE JUDGE PAUL J. KOMIVES

   v.

TRANS UNION, L. L. C.;
EQUIFAX INFORMATION
SERVICES, L. L. C. and HARLEY
DAVIDSON CREDIT CORP.;

     Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING TRANS UNION, L. L. C.'S MOTION FOR ATTORNEY FEES AND EXPENSES (Doc. Ent. 70)

### *Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.     Procedural History of this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.     Trans Union's Motion for Attorney Fees and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    D.     The January 17, 2008, Evidentiary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    E.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         1.     The Attorney Client Privilege Objections Are Overruled. . . . . . . . . . . . . . . . . . . . . 12
         2.     The Hearsay Objections Are Overruled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         3.     It Is Helpful to Consider Plaintiff's and Trans Union's Filings. . . . . . . . . . . . . . . . 14
         4.     The Court should find attorney Parker is not liable for an award of Trans Union's attorney
             fees pursuant to 28 U.S.C. § 1927. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         5.     The Court should find plaintiff O'Connor liable for an award of Trans Union's attorney
             fees pursuant to §§ 1681n(c) and/or 1681o(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
         6.     The outer range of defense counsel's billing rate appears to be high. . . . . . . . . . . . . 29
    F.     Defendant Trans Union's Motion Should Be Granted in Part and Denied in Part. . . . . . . . . . 32

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**I.**     **RECOMMENDATION:**  The Court should grant in part and deny in part Trans Union's

motion for attorney fees and expenses (Doc. Ent. 70) as it relates to plaintiff and his former

counsel, Brian P. Parker.  Specifically, the Court should deny the motion to the extent it seeks an

order deeming attorney Parker liable for Trans Union's attorney fees and expenses and should

grant the motion to the extent it seeks an order deeming plaintiff himself liable for Trans Union's

attorney fees and expenses.

**II.**     **REPORT:**

**A.**     **Background**

On April 15, 2000, William J. O'Connor ("plaintiff") purchased a used 1999 Harley

Davidson motorcycle.  Plaintiff financed $17,165.00 at an annual percentage rate of 11.99% for

a term of six years, or seventy-two (72) monthly payments of $335.44.  Doc. Ent. 33-4 at 2.[1]  He

made payments on this loan for about three years.  Doc. Ent. 33-5 at 3 ¶ 2.

During June 2003, a $7,983.23 payment was mistakenly applied to O'Connor's account.

Doc. Ent. 33-5 at 3 ¶ 3.[2]  A lien satisfaction form, dated August 7, 2003, states that the loan was

satisfied on July 3, 2003.  Doc. Ent. 34-3 at 6.  On or about August 10, 2003, Harley Davidson

sent O'Connor a $104.04 check.  Doc. Ent. 33-5 at 3 ¶ 3.

On or about August 19, 2003, plaintiff applied to transfer the title of the bike.  Doc. Ent.

33-7 at 2.[3]  On September 4, 2003, application was made to transfer title/correct plate to Hanna

---

[1]The bike was registered to plaintiff and David Jeffery Haskins.  Doc. Ent. 1 at 21.

[2]The timing of this allegation does not appear to be consistent with plaintiff's July 18,
2003, statement from Harley-Davidson Credit, which indicates a balance of $8,158.05.  Doc.
Ent. 34-5 at 10.

[3]The application notes that a name was removed from the title.  Doc. Ent. 33-7.  Perhaps
this application was made to remove Haskins's name from the title.

Alicia Stelman, O'Connor's wife.  Doc. Ent. 33-7 at 3.  On or about June 10, 2004, the motorcycle was registered to David Richard Pummill.  Doc. Ent. 33-8 at 2.

Harley Davidson discovered its accounting mistake during Summer 2004.  Doc. Ent. 33-5 at 4 ¶ 4.  Once Harley Davidson located plaintiff, "it sent him collection letters and attempted to collect the amount O'Connor owed on the Loan.  O'Connor did not respond to the collection attempts by HDC, and then finally contacted by telephone, advised HDC that he would not make payments on the Loan, because he had obtained a release."  Doc. Ent. 33-5 at 4 ¶ 4.

Plaintiff spoke with Harley Davidson during November 2004.  Doc. Ent. 33-3 at 10.  On or about November 25, 2004, O'Connor made a $1,888.35 payment to Harley Davidson.  Doc. Ent. 33-3 at 10; Doc. Ent. 34-5 at 8.  He made regular monthly payments until June 2005.  Doc. Ent. 33-3 at 11.  According to O'Connor, these payments were in the amounts of $400.00 (Dec. 4, 2004); $250.00 (Feb.  2, 2005); $250.00 (Mar. 16, 2005); $335.00 (Apr. 16, 2005) and two payments of $335.35 (May 4, 2005 & June 8, 2005).  Doc. Ent. 34-5 at 8.

As Shawna Jones, Harley Davidson Credit representative declared:  "After the Loan became 120 days delinquent, HDC charged off the Loan on its internal records, meaning that HDC removed the account from its books as an asset and absorbed the outstanding balance as a loss.  HDC submitted information to the credit reporting agencies to which it reports, such as Trans Union . . . and Equifax[,] that O'Connor's Loan had been charged off."  Doc. Ent. 33-5 at 4 ¶ 5.

It appears that plaintiff communicated the November 25, 2004, to May 4, 2005, payments to Harley Davidson's dispute department on May 6, 2005.  Doc. Ent. 1 at 23, 25.  It also appears that plaintiff communicated these and the June 8, 2005, payments to Equifax, Experian and

Trans Union during June 2005. Doc. Ent. 1 at 23, 24, 26. On June 20, 2005, Trans Union wrote to O'Connor, acknowledging receipt of his documentation. Doc. Ent. 34-5 at 4. Perhaps at the same time (on or about June 22, 2005), plaintiff wrote to Equifax Credit Information Services, Inc., Experian Information Solutions, and Trans Union. Doc. Ent. 34-3; Doc. Ent. 34-9 at 2 ¶ 6. On June 27, 2005, Equifax sent an Automated Consumer Dispute Verification (ACDV) to Harley Davidson Financial. Doc. Ent. 33-9 at 2; Doc. Ent. 34-9 at 3 ¶ 9. Equifax received the completed form on or about July 4, 2005. Doc. Ent. 34-9 at 3 ¶ 10. According to Trans Union, as of July 5, 2005, plaintiff owed $5,412, on his Harley-Davidson account. Doc. Ent. 33-9 at 3. This is consistent with another Trans Union document dated July 6, 2005. Doc. Ent. 34-5 at 6. *See also* Doc. Ent. 1 at 33 (cover letter).

On or about July 22, 2005, plaintiff sent correspondence to Experian and Equifax. Doc. Ent. 1 at 27. Equifax acknowledges receiving another dispute letter around this time. Doc. Ent. 34-9 at 3 ¶ 12. On July 25, 2005, Trans Union sent plaintiff a letter in which it deemed plaintiff's dispute frivolous. Doc. Ent. 33-10 at 3. On the same date, Equifax sent an ACDV to Harley Davidson Financial. Doc. Ent. 33-10 at 2; Doc. Ent. 34-9 at 4 ¶ 13. Equifax received the completed form from Harley-Davidson on or about August 1, 2005. Doc. Ent. 34-9 at 4 ¶ 14. It appears that plaintiff owed $5,412, on his Harley Davidson account as of August 2, 2005. Doc. Ent. 1 at 31.

In approximately August 2005, attorney Parker was referred this case by his brother-in-law, a motorcycle injury attorney. Hrg. Trans. at 25. In late September 2005, plaintiff again contacted Experian, Trans Union, Equifax and Harley Davidson "to dispute the Harley negative trade line and erroneous information placed on his credit report by Harley." Doc. Ent. 1 at 5 ¶

24, 34.  On or about September 26, 2005, Equifax received a letter from O'Connor.  Doc. Ent.

34-9 at 4 ¶ 16.

According to one Trans Union report dated October 1, 2005, plaintiff owed $3,897.  Doc.

Ent. 33-11 at 3.  However, according to a Trans Union document also dated October 1, 2005, the

balance on plaintiff's Harley Davidson account was $0.  Doc. Ent. 1 at 38.  *See also* Doc. Ent. 1

at 37 (cover letter).

On October 4, 2005, Equifax sent an ACDV to Harley Davidson Financial.  Doc. Ent. 33-

11 at 2; Doc. Ent. 34-9 at 4 ¶ 17.  In a letter of the same date, Harley Davidson Credit

acknowledged receipt of plaintiff's complaint.  Doc. Ent. 1 at 40.  Equifax received the

completed form from Harley-Davidson on or about October 6, 2005.  Doc. Ent. 34-9 at 4 ¶ 18.

In a letter of the same date, Harley Davidson Credit informed plaintiff that it was investigating

his complaint.  Doc. Ent. 1 at 39.  It appears that plaintiff owed $5,412, on his Harley Davidson

account as of October 7, 2005.  Doc. Ent. 1 at 36.[4]

On or about October 20, 2005, Mountain States Adjustment, a collection company,

informed plaintiff that he owed $5,411.87 on his Harley Davidson Financial account.  The letter

encouraged plaintiff to pay the debt in full, apparently at an annual interest rate of 0%.  Doc. Ent.

1 at 5 ¶ 27, 41.  Plaintiff made six months worth of payments in October 2005.  He made another

payment in January 2006.  Doc. Ent. 33-3 at 11.

B.      **Procedural History of this Case**

This lawsuit began on November 28, 2005, when plaintiff William O'Connor,

---

[4]During the January 17, 2008, hearing, attorney Parker testified that he had seen
sometimes contradictory responses.  Hrg. Trans. at 74.

represented by attorney Brian P. Parker, filed a complaint against defendants Trans Union LLC ("Trans Union"), Equifax Information Services LLC ("Equifax"), and Harley-Davidson Credit Corp., doing business as Harley Davidson-Credit ("Harley Davidson").  Doc. Ent. 1.  The complaint listed eleven counts - four violations of the Fair Credit Reporting Act (FCRA) as to Trans Union; four violations of the FCRA as to Equifax; two violations of the FCRA as to Harley Davidson; and an allegation of mutual agency as to all defendants.  Doc. Ent. 1 ¶¶ 70-138.  Defendants Trans Union, Equifax, and Harley Davidson filed answers on November 27th and 28, 2005, and January 16, 2006, respectively.  Doc. Entries 7, 10 & 15.[5]  On February 3, 2006, Judge Cleland conducted a scheduling conference.

In response to Harley Davidson's requests for admission, plaintiff admitted that when he "received a release of the lien on the Harley-Davidson motorcycle . . . that [he] knew that [he] had not fully paid for the motorcycle and still owed money on the loan for the motorcycle."  He also stated, "Harley repeatedly told us it was paid off and voluntarily sent the release of lien and sent the money back, refusing our payments."  Doc. Ent. 33-6 at 4 (#10).  *See also* Doc. Ent. 33-3 at 12.

Plaintiff was deposed on May 15, 2006, by Harley Davidson.  Attorney Laura Baucus represented Harley Davidson, and plaintiff was represented by attorney Parker.  Doc. Ent. 33-3.  When asked why payments stopped in July 2003, plaintiff responded, "[b]ecause they told me it was paid off."  When asked, "[w]as it paid off[,]" plaintiff responded, "No."  Subsequently, counsel for Harley Davidson asked plaintiff if "[w]hen [he] asked for the release of lien, [was it] accurate that [he] knew that the loan was not paid off?"  Plaintiff responded, "I knew, but they

---

[5]On March 10, 2006, Equifax filed an amended answer.  Doc. Ent. 24.

insisted it was." Plaintiff testified that he knew Harley Davidson had made a mistake, but he also testified that he was not trying to take advantage of it. Doc. Ent. 33-3 at 7. However, when asked if he "knew even in receiving the release of the lien that [he] still owed money on the bike[,]" plaintiff answered, "[a]t that point I didn't." Doc. Ent. 33-3 at 11.

Shortly thereafter, on May 19, 2006, the parties filed their witness lists. Doc. Entries 26-29. On or about July 9, 2006, plaintiff wrote to Judge Cleland, stating that his lawyer had abandoned this case, facts had been misrepresented and counsel had asked to step down the day before. Doc. Ent. 74-4.[6] On July 10, 2006, each defendant filed a motion for summary judgment. Doc. Entries 33, 34 & 35. In its motion for summary judgment, Trans Union argued that "[t]he furnishers' FCRA duties limit the liability of credit reporting agencies[.]" Doc. Ent. 35 at 34-35. Specifically, Trans Union noted that its procedures "requiring furnishers to certify accuracy are in accord with the FCRA and Trans Union reasonably relied upon Harley complying with its obligations under the FCRA." Doc. Ent. 35 at 35.

On July 19, 2006, Judge Cleland held a status conference, and on July 21, 2006, he entered an order permitting attorney Parker to withdraw as counsel for plaintiff. Doc. Ent. 39. On August 16, 2006, attorney Donald L. Bramlage, Jr., filed a notice of appearance on plaintiff's behalf. Doc. Ent. 41.[7]

On November 30, 2006, Judge Cleland entered a stipulated order of dismissal with

---

[6]The dispositive motion deadline was July 10, 2006. Doc. Ent. 17 at 4 ¶ 6. According to attorney Parker, plaintiff was under the impression that "a summary disposition was actually going to be heard on the day of filing." Hrg. Trans. at 52.

[7]On September 19, 2006, attorney Bramlage filed a motion for additional discovery to take several depositions. Doc. Ent. 46. Judge Cleland denied this motion on October 16, 2006. Doc. Ent. 52.

prejudice as to defendant Equifax, as well as an opinion and order granting Harley Davidson's motion for summary judgment and dismissing defendants Trans Union and Equifax with prejudice. Doc. Entries 58 & 59. As Judge Cleland stated in his order, "the facts set forth in Trans Union and Equifax's motions conclusively establish that they cannot be held liable under the FCRA. These facts, which are deemed uncontroverted, show that Trans Union and Equifax fulfilled all of their statutory duties regarding Plaintiff's debt, which Plaintiff has acknowledged he indeed owed." Doc. Ent. 59 at 4 n.3. Judgment in favor of defendant Harley Davidson and against plaintiff was entered the same day. Doc. Ent. 60.

The following day, on December 1, 2006, Trans Union filed a motion "to vacate unconditional dismissal, enter summary judgment or a Rule 41 dismissal with fees for pursuing this matter and for sanctions for plaintiff's misrepresentation that Trans Union agreed to an unconditional dismissal". Doc. Ent. 61. On February 12, 2007, Judge Cleland entered an opinion and order granting in part Trans Union's motion to vacate, amending the November 30th order and granting Trans Union's motion for summary judgment. Doc. Ent. 66. That same day, an amended judgment was entered. Doc. Ent. 67.

## C.     Trans Union's Motion for Attorney Fees and Expenses

Under the general American Rule, unless Congress provides otherwise, parties to litigation are to bear their own attorney fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("Unlike Britain where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees.") (citing cases). However, on February 26, 2007, Trans Union filed a bill of costs and a motion for attorney fees and expenses pursuant to 15 U.S.C. § 1681n(c), 1681o(b)

and 28 U.S.C. § 1927. Doc. Entries 68 & 70.[8] On March 5, 2007, costs in the amount of

$1,265.30 were taxed against plaintiff. Doc. Ent. 73.

Attorneys Parker and Bramlage each filed a response to the motion for fees. Doc. Entries

74 & 75. Trans Union filed a reply. Doc. Ent. 76. On May 24, 2007, Judge Cleland entered an

order denying Trans Union's motion in part as to attorney Bramlage. The order deferred a ruling

on the motion to the extent it related to attorney Parker and plaintiff. Doc. Ent. 77 at 8.[9] In part,

Judge Cleland stated:

> The court is inclined to agree with Trans Union that, even in the early stages, this
> case should have been abandoned, perhaps before the complaint was filed or at
> least shortly thereafter with the additional opportunity for client consultation that
> would have been available before the answer was filed. Plaintiff, Parker or both
> might be found to bear responsibility in that regard. Similarly, following the
> statements made by Plaintiff at his deposition, the inherent problems with
> Plaintiff's claim must have become even more clear. These inclinations of this
> court, however, cannot be read as a definitive holding because these issues can be
> fairly resolved only upon inquiry into the actions of Parker and Plaintiff. A
> hearing, at least, would be implicated; testimony, very likely, would be required.

Doc. Ent. 77 at 6-7. On May 25, 2007, Judge Cleland referred Trans Union's motion to me for

report and recommendation. Doc. Ent. 78.

On July 27, 2007, I noticed a telephonic conference for August 17, 2007. Doc. Ent. 79.

On that date, I conducted a telephonic status conference with counsel for the parties. Three days

later, on August 20th, I entered an order noticing a hearing regarding the remaining issues

referred to in Judge Cleland's opinion and order of May 24, 2007, for November 26, 2007.

---

[8]Plaintiff provides a copy of a February 28, 2007, electronic mail to Alan Gill of Schuckit
& Associates, P. C., noting that the attorney of record must be contacted regarding concurrence
on a motion. Doc. Ent. 74-3.

[9]On the same date, this case was reassigned from Magistrate Judge Capel to me.

Pursuant to that order, counsel were to inform other counsel in writing on or before September 6, 2007, of the names of any witnesses they intended to present to testify at this hearing and to file motions in limine on or before Monday October 1, 2007. Furthermore, counsel for defendant was to provide an itemized statement to the Court and serve copies on all counsel setting forth the amount of attorney fees being sought on or before September 28, 2007. Doc. Ent. 80.

On September 6, 2007, plaintiff filed a witness list. Doc. Ent. 83. On September 28, 2007, Trans Union submitted an itemized statement of attorney fees and expenses. Doc. Ent. 86. On November 8, 2007, attorney Barry Sigman filed a notice of appearance on behalf of attorney Parker. Doc. Ent. 87. On November 21, 2007, the November 26th hearing was cancelled and was re-noticed for December 13, 2007. Doc. Entries 88 and 89. On November 29, 2007, at the Court's request, the December 13th hearing was cancelled and was re-noticed for January 17, 2008. Doc. Entries 91 and 92. On January 16, 2008, attorney Sigman filed a pre-hearing statement on attorney Parker's behalf. Doc. Ent. 93.

**D.      The January 17, 2008, Evidentiary Hearing**

On the date set for hearing, attorneys Donald L. Bramlage, Jr.; Christopher T. Lane (Indianapolis, IN); Brian P. Parker and Barry S. Sigman were present. Keeping in mind Judge Cleland's direction that the plaintiff and attorney Parker's responsibility might be fairly resolved only "upon inquiry into the actions of Parker and Plaintiff[,]" Doc. Ent. 77 at 7, I heard testimony from attorney Parker. Although attorney Parker had filed a witness list on September 6, 2007, noting that William O'Connor and Hanna Stelman would testify at the forthcoming hearing, plaintiff and his wife were not present.

Fourteen exhibits were offered during the hearing, some of which already appear in the

record of this case.[10]  Attorney Parker offered (1) an August 7, 2003, lien satisfaction form, an April 15, 2000, application for Michigan vehicle title on a Harley-Davidson motorcycle and a September 20, 2004, application for Michigan vehicle title on a 1956 GMC motor home (Parker's Ex. 1); (2) a one-page hand written dispute letter dated May 6, 2005; (3) copies of June and July 2005 domestic return receipts to Trans Union, Experian and Equifax; (4) correspondence between plaintiff and the credit reporting agencies, including an August 2, 2005, credit file noting a charge off for Harley Davidson Financial; (5) copies of September 2005 domestic return receipts to the credit reporting agencies and Harley Davidson credit; (6) correspondence between plaintiff, the credit reporting agencies and Harley Davidson, including an October 7, 2005, Equifax credit file noting a charge off for Harley Davidson Financial; (7) October 4th and 6, 2005, letters from Harley-Davidson Credit to plaintiff; (8) an October 20, 2005, letter from Mountain States Adjustment regarding Harley Davidson Financial and an amount of $5,411.87; (9) two letters concerning plaintiff and his wife's credit scores; (10) a two-page, May 17, 2006, letter from attorney Parker to plaintiff, as well as an May 16, 2006, electronic mail exchange between attorney Parker and Harley-Davidson counsel, Laura C. Baucus; (11) a one-page, May 23, 2006, letter from attorney Parker to plaintiff; (12) a three-page, July 9, 2006, letter from plaintiff to Judge Cleland, as well as a February 3, 2006, electronic mail from attorney Baucus to attorney Parker; and (13) a four-page, July 10, 2006, letter from attorney Parker to plaintiff, including a proposed agreement to dismiss counsel. Trans Union offered a copy of the State Bar of Michigan 2007 Economics of Law Practice

---

[10]Many of attorney Parker's exhibits may be found as one of the nine exhibits to the November 28, 2005, complaint (Doc. Ent. 1 at 20-43) or as an attachment to the March 14, 2007, response to the instant motion (Doc. Ent. 74-4).

Survey.[11]

**E.     Analysis**

**1.     The Attorney Client Privilege Objections Are Overruled.**

During the January 17, 2008, hearing, plaintiff's counsel, attorney Bramlage, raised an attorney client privilege objection with regard to some of attorney Parker's exhibits and some of his testimony.  *See, i.e.*, Hrg. Trans. at 25-31.  I overruled this objection.

First, plaintiff and attorney Bramlage's March 14, 2007, response brief states, "[t]he worst that could be said is that Plaintiff followed Mr. Parker's advice."  Doc. Ent. 75 at 3. Plaintiff's allegation that he followed attorney Parker's advice is a waiver of the attorney client privilege to the extent that plaintiff himself is alleging that privileged communications illustrate a shift in blame from plaintiff to his former attorney.

Second, this conclusion is supported by the model rule of professional conduct that provides, "[a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client[.]"  MRPC Rule 1.6.

In an effort to mitigate the disclosure during this hearing of any confidential communication made to attorney Parker by plaintiff,  I provided that the transcript should be

---

[11]I asked the court reporter to prepare an expedited transcript, and it was received on January 24, 2008.

placed under seal and not be made a matter of public record unless and until a further order of the Court so that the attorney/client matter can be reviewed, if necessary, by Judge Cleland at a later date." Hrg. Trans. at 30. Likewise, attorney Parker's May 17th, May 23rd and July 10, 2006, letters to plaintiff were received under seal. Hrg. Trans. at 51. These documents represent attorney Parker's post-deposition advice to O'Connor, and the portion of these letters quoted below does not constitute the disclosure of a confidential communication from plaintiff to attorney Parker.[12]

Also, if there is any concern about the revelation of communications made between plaintiff and attorney Parker before the filing of this lawsuit and/or before the date of the deposition, the Court should note that portions of the transcript of plaintiff's May 15, 2006, deposition testimony are part of the record in this case (Doc. Ent. 33-3), and it is enough to say that plaintiff's deposition testimony is consistent with attorney Parker's testimony at the January 17, 2008, hearing to the extent that attorney Parker maintained, as he did in his May 17, 2006, letter, that the case "is not what was originally represented to me." Parker Hrg. Ex. 10.

2.      **The Hearsay Objections Are Overruled.**

Another objection raised during the January 17, 2008, hearing was that certain testimony constituted hearsay - "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). I overruled these objections, because I intended to consider the information elicited at

_____

[12]*See Arcuri v. Trump Taj Mahal Associates*, 154 F.R.D. 97, 103 (D.N.J. 1994) (applying federal privilege law, "the [attorney-client] privilege is not a one-way street, and communications between attorney and client are protected when engaged in for the purpose of soliciting and/or providing opinion and advice.").

the hearing not for the truth of the matter asserted but for the effect any such information may have had on the timing of attorney Parker's actions during the time he represented plaintiff.[13]

### 3.     It Is Helpful to Consider Plaintiff's and Trans Union's Filings.

Although Trans Union's motion was originally directed at plaintiff, attorney Parker and attorney Bramlage, Judge Cleland's May 24, 2007, order denied Trans Union's motion as to attorney Bramlage. The specific issue referred to me is "whether Parker, Plaintiff or both should be required to pay all or some portion of Trans Union's attorney fees under the authority cited by Trans Union in its motion." Doc. Ent. 77 at 7. With this in mind, it is appropriate for the Court to review plaintiff's, attorney Parker's and Trans Union's filings in this case.

Attorney Parker's representation of plaintiff began with the November 28, 2005, filing of the complaint (Doc. Ent. 1) and concluded with his July 21, 2006, withdrawal as counsel (Doc. Ent. 39). While serving as plaintiff's counsel of record, attorney Parker filed or caused to be filed the complaint (Doc. Ent. 1); three returns of service (Doc. Entries 3, 4, & 5); and two witness lists (Doc. Ent. 19 & 28).[14] Additionally, attorney Parker filed on his own behalf a lien

---

[13]For example, attorney Bramlage objected on the basis of hearsay to "anything that Mr. Parker elicited from [plaintiff] or was elicited from Mr. O'Connor in the deposition." Attorney Bramlage argued that plaintiff was not unavailable under Fed. R. Evid. 804. He also noted that plaintiff was not subpoenaed to "testify as to what he said at the deposition[.]" Hrg. Trans. at 44. Ultimately, I stated that we were talking about attorney Parker's reaction to the deposition. Hrg. Trans. at 45.

Also, attorneys Lane and Bramlage registered a hearsay objection when attorney Parker's counsel asked his client a question regarding another attorney, and attorney Sigman stated it was a party admission (Fed. R. Evid. 801(d)(2)). Hrg. Trans. at 60-61. Ultimately, I ruled that it was being offered to establish attorney Parker's good faith. Hrg. Trans. at 61.

[14]Bramlage's representation of plaintiff began on August 16, 2006 (Doc. Ent. 41). On plaintiff's behalf, attorney Bramlage filed a motion to take depositions (Doc. Ent. 46); a response to Harley Davidson's motion for summary judgment (Doc. Ent. 54); a response to Trans Union's motion to vacate and for sanctions (Doc. Ent. 62); and a response to the motion for attorney fees

on the file and case (Doc. Ent. 40); a response to the motion for attorney fees and expenses (Doc. Ent. 74); and a witness list (Doc. Ent. 83).[15]  Furthermore, attorney Sigman has filed a pre-hearing statement on attorney Parker's behalf.  Doc. Ent. 93.

On the other hand, Trans Union has filed twenty-six (26) items in this case. Substantively, Trans Union filed an answer and an amended answer to the complaint (Doc. Entries 7 and 25); a motion for summary judgment and appendix (Doc. Entries 35 and 36); a response to plaintiff's motion for additional discovery (Doc. Ent. 49); a reply to the motion for summary judgment (Doc. Ent. 55); a motion to vacate and for sanctions (Doc. Ent. 61); a reply to that motion (Doc. Ent. 63); a bill of costs and motion for attorney fees (Doc. Entries 68 and 70); a reply to that motion (Doc. Ent. 76); and an itemized statement of attorney fees and expenses (Doc. Ent. 86).[16]

**4.     The Court should find attorney Parker is not liable for an award of Trans Union's attorney fees pursuant to 28 U.S.C. § 1927.**

**a.**     As previously noted, Trans Union alleges that "[f]rom the outset, Plaintiff's lawsuit lacked merit and Plaintiff and [attorney Parker] were aware of such facts prior to filing the Complaint and as early as the [February 3, 2006] scheduling conference."  Doc. Ent. 70 at 9 ¶ 1. Furthermore, Trans Union alleges that attorney Parker "proceeded with Plaintiff's baseless claims, delayed discovery, refused to accept communications and refused to concur with

---

and expenses (Doc. Ent. 75).

[15]Attorney Parker's attorney, Barry Sigman, filed a notice of appearance.  Doc. Ent. 87.

[16]Trans Union also filed eight items concerning appearances of counsel (Doc. Entries 2, 12, 16, 69, 71, 72, 85 and 90); one statement of disclosure of corporate affiliations (Doc. Ent. 8); two witness lists (Doc. Ent. 18 and 27); one motion for leave to file a dispositive motion brief exceeding the page limit (Doc. Ent. 30); one motion to participate in status conference telephonically (Doc. Ent. 43); and one stipulation (Doc. Ent. 53).

summary judgment." Doc. Ent. 70 at 9 ¶ 2.

**b.**     "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 ("Counsel's liability for excessive costs").

"[T]he imposition of section 1927 sanctions against counsel 'does not require a finding of recklessness, subjective bad faith, or conscious impropriety; an attorney does not have carte blanche to burden the federal courts by pursuing claims that he should know are frivolous.'" *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1379 (6ᵗʰ Cir. 1987) (citing *Haynie v. Ross Gear Division of TRW, Inc.*, 799 F.2d 237, 243 (6th Cir.1986) (per curiam), *vacated as moot*, *Haynie v. Ross Gear Division of TRW, Inc.*, 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987)).

"28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety. An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to carte blanche to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise 'unreasonable and vexatious.' Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Jones v. Continental*

16

*Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). "[S]imple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927. There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987).

**c.**     In addition to *Jones*, Trans Union relies upon three other cases in support of its argument that an award of fees pursuant to § 1927 is appropriate in this case. Doc. Ent. 70 at 11. Trans Union notes that "[t]he purpose of § 1927 'is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'" *Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (quoting *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (citations omitted)). Furthermore, Trans Union notes that "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.'" *Riddle & Associates*, 414 F.3d at 835 (quoting *Kapco*, 886 F.2d at 1491 (quotation omitted)). Finally, Trans Union notes that "[t]here is absolutely no hint in *Overnite Transportation [Company v. Chicago Industrial Tire Company,* 697 F.2d 789 (7th Cir. 1983)] that a lawyer may escape sanctions for misconduct simply by withdrawing from a case before opposing counsel applies for sanctions." *In re Itel Securities Litigation*, 791 F.2d 672, 675 (9th Cir. 1986).

**d.**     "In general, the burden of proof is on the party seeking the sanction." *Phinney v. Paulshock*, 181 F.R.D. 185, 197 (D.N.H. 1998). This is true where sanctions are sought pursuant

to 28 U.S.C. § 1927. *Cook v. American S.S. Co.*, 134 F.3d 771, 776 (6th Cir. 1998) ("On appeal from orders imposing 28 U.S.C. § 1927 sanctions, the Court stated that 'the burden of proof has not been shifted; the show cause order [which required the ultimately sanctioned attorney to state why he should not be assessed 28 U.S.C. § 1927 costs, expenses and attorney fees] merely facilitated the due process requirements; thus, this claim can be easily dismissed.'"); *Phinney v. Paulshock*, 181 F.R.D. 185, 197 (D.N.H. 1998) (citing *Cook*, 134 F.3d at 776).

There were allegations during the hearing that Trans Union had not provided evidence and, therefore, had not met its burden. In any event, as it relates to attorney Parker's potential liability, the Court need not decide whether Trans Union has met its burden. This is so, because I conclude below that attorney Parker should not be held liable for Trans Union's attorney fees.

**e.**      With respect to the instant motion, attorney Parker filed a response in which he argued that Trans Union's legal arguments were "without merit as to the law offices of Brian P. Parker PC[.]" Doc. Ent. 74 at 5. As attorney Parker pointed out in his response, "[s]oon after the May 2006 deposition of Plaintiff, the Law Offices of Brian Parker P.C. was able to withdraw from the case. Even the Plaintiff was claiming we were not following his wishes after . . . the deposition[.]" Doc. Ent. 74 at 6. As attorney Parker notes, "§ 1927 differs from Rule 11 because it does not require 'reasonable' investigation." *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990). Section 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996). "Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings." *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986).

Attorney Parker maintains that in this case "the most significant, initial undertaking was

carried out by the Defendants in their eight hour deposition of the Plaintiff. Plaintiff['s] counsel

was out of the case within two months after and did not conduct itself in an unreasonable and

vexatious manner. MRPC [Model Rules of Professional Conduct] 1.6 [Confidentiality of

Information] prevents any further discussion as to what happened." Doc. Ent. 74 at 7. Attorney

Parker also seeks an order of the Court requiring Trans Union to "pay the law firm $1500 for

having to respond to this motion." Doc. Ent. 74 at 7-8.[17]

Attorney Parker explains that during the February 3, 2006, conference, attorney Baucus

"advised the court of a new theory in the defense of the claim: That the mistaken pay off of the

loan occurred as a result of the Plaintiff's father's loan being paid off and Mr. O'Connor had

been given credit on his father's loan." Doc. Ent. 74 at 3. In support of this statement, attorney

Parker provided a copy of a same-day electronic mail from attorney Baucus, in which she

apologized to attorney Parker and stated that she "now [knew] that [he] [was] not aware of"

plaintiff's awareness of the "misunderstanding re the pay off and lien release[.]" Doc. Ent. 74-5,

Parker Hrg. Ex. 12.

To the extent defendant Trans Union argues that attorney Parker would not accept

communications and would not concur with the July 10, 2006, motion for summary judgment,

attorney Parker provides a copy of a May 5, 2006, letter to attorney Mickey J. Lee of Schuckit &

Associates, P.C., noting that "[s]o that it is safe for our clients and we avoid 'phantom faxes,' we

again reiterate that we can only accept written, mailed correspondence from you. The last fax

---

[17]This request should be denied. When Trans Union filed its motion, it was entitled to
*seek* reimbursement for its attorney fees from plaintiff and his counsel.

cost my client $500.  That won't happen again."  Doc. Ent. 74-7.[18]

Attorney Parker's affidavit in support of plaintiff's response to defendant Trans Union's motion is also relevant.  Among other things, attorney Parker represented that he "took this case with the hope of correcting the wrong as represented by Mr. O'Connor.  His allegations were believed in good faith, and in fact, he did have a case based on the inaccuracy of his credit reports."  Doc. Ent. 74-6 ¶ 13.  Furthermore, attorney Parker represented that "MRPC 1.6 prevents [him from] properly defending [himself] but [his] hope is that the court will trust [that his firm] took and filed this case in good faith. [The firm's] withdrawal was similarly justified."  Doc. Ent. 74-6 ¶ 14.  Additionally, attorney Parker represented that his firm has "received nothing for all of the time and energy in this case and [he] would not take a case if [he] believed it would lose or [he] could suffer financial harm as [the firm has] done here in representing Mr. O'Connor."  Doc. Ent. 74-6 ¶ 15.

**f.**      As previously noted, attorney Parker is now represented by counsel.  Doc. Ent. 87.  On January 16, 2008, counsel for attorney Parker filed a pre-hearing statement, arguing that attorney Parker "should not be held responsible for any of Defendant's costs."  Attorney Parker claims that "[he] represented [O'Connor] in good faith, based upon the facts represented to him as true by the client."  Doc. Ent. 93 at 1.  Specifically, attorney Parker maintains that he "found that the Plaintiff's case was not viable, and that certain facts had not been as represented to him by the Plaintiff.  He urged the Plaintiff to discontinue the case in the clearest of terms; the Plaintiff was

---

[18]With respect to defendant Trans Union's allegation that attorney Parker himself would not concur in defendant Trans Union's July 10, 2006, motion for summary judgment, Doc. Ent. 70 at 9 ¶ 2, it is worth noting that just prior to the filing of that motion plaintiff had expressed his dissatisfaction with counsel (Doc. Ent. 74-4 [July 9, 2006]).

completely uncooperative, and the relationship became such that Parker was obligated to withdraw from representation."  Doc. Ent. 93 at 2.

On direct examination, attorney Parker agreed that it appeared plaintiff "got a bad credit report from the same people who apparently gave him a release of lien[.]" Hrg. Trans. at 36.  He further stated that "[a]s a result of th[e] third letter[,] it appeared that TransUnion took it off the credit reports."  Hrg. Trans. at 41.  He further testified that "everything rests on the deposition in these cases."  Hrg. Trans. at 42.  After the deposition, attorney Parker's advice to plaintiff was to "[g]et out of this case."  Hrg. Trans. at 48.  Attorney Parker agreed that attorney Bramlage "wanted to continue on the case that [attorney Parker] didn't[.]" Hrg. Trans. at 57.  Attorney Parker also testified about his history with Trans Union.  Hrg. Trans. at 58-60.  He also testified that during the February 3, 2006, conference, attorney Baucus, counsel for Harley Davidson, "proffered that the reason why the lien release had occurred [was] because [plaintiff's] father had a loan with Harley-Davidson and that had been accidentally paid off and then [plaintiff] was given credit[.]"  Parker Hrg. Trans. at 61.

During cross-examination, attorney Parker agreed that "the first time [he] found out that there were problems with the case[,]" was the deposition.  Hrg. Trans. at 67.  He stated that the story "went completely different in the deposition[.]" Hrg. Trans. at 67.  According to attorney Parker, "it came out in the deposition that, again, the [O'Connors] had told me, we'd made several payments to Harley-Davidson and they refused them and they kept sending our money back.  And that came out that they'd only sent one check back and that was for the one overage of a payment that they'd made many months ago."  Hrg. Trans. at 72-73.  *See also* Hrg. Trans. at 74.  Attorney Parker also stated, "[i]t turns out they didn't do anything that they said they did."

Hrg. Trans. at 75-76.  Specifically, he stated:

> They had not pursued Harley-Davidson as hard as they said.  Harley-Davidson
> had not sent them many checks.  In fact, they hadn't even sent Harley-Davidson
> all the checks.  And that was pointed out when Ms. [Baucus], the Harley-
> Davidson attorney, got an Excel graph showing exactly all the payments they'd
> never made.  And they were during the months where they rela[t]ed to me that
> they had made them and that Harley-Davidson had returned their money to them.

Hrg. Trans. at 76.  Furthermore, attorney Parker admitted that he did know that the bike had not

been paid off when he filed the complaint.  Hrg. Trans. at 79.  However, he explained that

plaintiff had said he had tried to pay on the account.  Hrg. Trans. at 79-80.  Additionally,

attorney Parker stated that it became apparent at the deposition that plaintiff leaned a lot on his

wife, Ms. Stelman.  Hrg. Trans. at 81.

Furthermore, attorney Parker offered two exhibits during the hearing that I find

particularly persuasive with regard to attorney Parker's post-May 15, 2006, deposition efforts to

discontinue this case - attorney Parker's May 17th and May 23, 2006, letters to plaintiff.  As

previously mentioned, these exhibits were received under seal; therefore, in the interest of

keeping the contents of this letter as confidential as possible, I note only that these letters stated

in part, "[t]he case is going nowhere and is not what was originally represented to me.  I would

like your permission to settle this case and get my fees and hopefully get you some money too.

Please email me or call me right away to do this so I can end this before we have to let them

depose Ms. Stellman and cause greater costs in this case[,]" and "[y]our choices at this point and

after using the bad language you did on the phone . . . are to accept any settlement you can get or

fire me."

**g.**     The Court should find attorney Parker is not liable for an award of Trans Union's

attorney fees pursuant to 28 U.S.C. § 1927.  There is no evidence that attorney Parker multiplied

the proceedings against Trans Union unreasonably or vexatiously at any time. *In re Ruben*, 825 F.2d at 984, and *Jones*, 789 F.2d at 1230.

To begin, it does not appear that Parker had reason to know that the claim was frivolous. *Smith*, 829 F.2d at 1379. The foregoing discussion indicates that Parker did not understand the baselessness of plaintiff's claims at the time the complaint was initially filed. Rather, it appears that attorney Parker initially filed the complaint attempting to remedy damage done to plaintiff's credit. Plaintiff represented that Harley-Davidson had designated his account as paid off and then later reported him to credit agencies, thus making plaintiff appear to be a sympathetic client.

Also, the February 3, 2006, pre-trial conference was the first time that Parker heard about Harley-Davidson's theory that a loan payment was mistakenly applied to plaintiff's account when it should have been applied to plaintiff's father's account. Doc. Ent. 74-3. The defense, namely attorney Baucus, even apologized to Parker for springing a new theory on him. Doc. Ent. 74-5.

Defendant Trans Union points out attorney Parker's admission that on February 3, 2006, attorney Baucus "explained to him the circumstances surrounding the Account and the reasons HDC was reporting the Account as charged off." Doc. Ent. 76 at 2. While the argument might be made that attorney Parker should have investigated the merit of plaintiff's claim after receiving attorney Baucus's February 3rd electronic mail, attorney Parker's actions following the May 15th deposition were anything but an unreasonable and vexatious multiplication of the proceedings. Attorney Parker did not immediately move to withdraw from the case after learning of plaintiff's scheme from the May 15, 2006, deposition. Although defendant Trans Union notes that attorney Parker prosecuted this case for two months following plaintiff's

deposition and did not withdraw until after defendant Trans Union filed its dispositive motion, Doc. Ent. 76 at 2, the Court is now in confidential possession of the May 17th and May 23rd letters from counsel to plaintiff, Hrg. Exhibits 10 & 11, which indicate attorney Parker's attempt to cease progression of this case. Additionally, according to plaintiff's July 9, 2006, letter to Judge Cleland, attorney Parker had asked to step down on July 8, 2006. Doc. Ent. 74-4 at 1. Furthermore, attorney Parker wholly abandoned the case by the July 21, 2006, order permitting withdrawal.[19]

For these reasons, attorney Parker should not be held liable under § 1927 for Trans Union's attorney fees during his representation of plaintiff.[20]

**5.   The Court should find plaintiff O'Connor liable for an award of Trans Union's attorney fees pursuant to §§ 1681n(c) and/or 1681o(b).**

**a.**   Trans Union argues that "Plaintiff and his attorneys' conduct was in bad faith and for the purposes of harassment and unreasonably and vexatiously caused Trans Union to incur attorney fees[.]" Doc. Ent. 70 at 9. In support of this statement, Trans Union alleges that "[f]rom the outset, Plaintiff's lawsuit lacked merit and Plaintiff and [attorney Parker] were aware of such facts prior to filing the Complaint and as early as the [February 3, 2006] scheduling conference." Doc. Ent. 70 at 9 ¶ 1. Trans Union contends that sanctions are appropriate, because plaintiff and

---

[19]It is also worth noting that between plaintiff's May 15, 2006, deposition and Judge Cleland's July 21, 2006, order (Doc. Ent. 39) allowing attorney Parker's withdrawal as counsel for plaintiff, attorney Parker filed only the May 19, 2006, witness list (Doc. Ent. 28).

[20]The Court need not assess any liability by attorney Parker under § 1681. "§ 1681n(c) does not authorize imposition of attorney's fees upon a party's lawyer." *Ryan*, 2001 WL 185182 at *5. "[T]he same analysis that applied to § 1681n(c)applies to § 1681 o(b)." *Lewis*, 2006 WL 2861059 at *3.

his counsel (1) "[k]new they had no viable claim;" (2) "[h]ad information that showed Trans Union complied with its duties;" (3) "[k]nowingly made false assertions;" (4) "[o]ffered <u>no</u> supporting evidence;" (5) "[d]id not oppose summary judgment;" and (6) [p]ursued frivolous claims." Doc. Ent. 70 at 11-12.

In response, plaintiff and attorney Bramlage note that, following attorney Bramlage's August 16, 2006, appearance of counsel, they filed only the September 19, 2006, discovery motion, which was heard and denied on October 12, 2006. Doc. Ent. 75 at 2.[21] Allegedly, plaintiff thereafter made an offer via electronic mail to dismiss plaintiff's claim against defendant Trans Union, to which defendant Trans Union did not respond. Doc. Ent. 75 at 2.[22] Plaintiff argues that he "did nothing, either under the representation of Mr. Parker, or Donald L. Bramlage, Jr. which would entitle . . . Defendant Trans Union to attorney fees and costs, as its efforts were not undertaken in bad faith or for purposes of harassment, as related in Mr. Parker's Brief. The worst that could be said is that Plaintiff followed Mr. Parker's advice." Plaintiff contends that "[i]t should be apparent that Plaintiff did absolutely nothing after Donald L. Bramlage, Jr. became his attorney to prolong this litigation, except to authorize the filing and argument of a motion for further discovery[,]" and that "[t]his matter was brought to an end as expeditiously as possible." Doc. Ent. 75 at 3.[23]

---

[21]Plaintiff maintains that this motion was filed "as Mr. Parker had not taken the deposition of any of the Defendant Harley Davidson's employees." Doc. Ent. 75 at 3.

[22]According to plaintiff, defendant Trans Union instead filed the November 27, 2006, reply brief (Doc. Ent. 55). Doc. Ent. 75 at 3.

[23]Plaintiff and attorney Bramlage seek an award of $2,500 "for having to defend this Motion." Doc. Ent. 75 at 3. This request should be denied, for the reasons stated above with regard to attorney Parker's similar request.

**b.** The Fair Credit Reporting Act (FCRA) is embodied in 15 U.S.C. §§ 1681-1681x. 15 U.S.C. § 1681n governs civil liability for willful noncompliance. "Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." 15 U.S.C. § 1681n(c).

15 U.S.C. § 1681o governs civil liability for negligent noncompliance. "On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." 15 U.S.C. § 1681o(b).

**c.** "Section 1681n(c) requires a showing that a pleading, motion, or paper was filed 'in bad faith' or for purposes of harassment. The term 'bad faith,' as it is ordinarily used in the attorney's fee context, requires a showing either that the party subjectively acted in bad faith-knowing that he had no viable claim-or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Ryan v. Trans Union Corp.*, 2001 WL 185182, *5 (N.D.Ill. Feb. 26, 2001) (referencing *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978) (42 U.S.C. § 2000e-5(k)). *See also Lewis v. Trans Union LLC*, 2006 WL 2861059, *4 (N.D.Ill. Sept. 29, 2006);[24] *Mayle v. Equifax*

---

[24]"Plaintiff was well aware that she was lying when she consulted with K & M and lying in the allegations against Trans Union in the complaint. Indeed, K & M has produced an affidavit in which the attorney swore that he informed Plaintiff of the consequences of lying before filing the complaint. Therefore, imposing attorney's fees under Title 15 U.S.C. §§ 1681n(c) and 1681o(b) are entirely appropriate against Plaintiff because she knew of the falsity

*Information Services, Inc.*, 2006 WL 398076, *2 (N.D.Ill. Feb. 14, 2006);[25] and *DeBusk v. Wachovia Bank*, 2006 WL 3735963, *5 (D.Ariz. Nov. 17, 2006).[26]

**d.**    "It is the burden of the party moving for fees under § 1681n(c) to demonstrate that they are warranted."  *DeBusk v. Wachovia Bank*, 2006 WL 3735963, *4 (D.Ariz. Nov. 17, 2006) (slip copy).  At the conclusion of the January 17, 2008, hearing, attorney Lane stated that Trans Union was relying on (1) the undisputed facts in Judge Cleland's November 30, 2006, order granting Harley Davidson's dispositive motion (Doc. Ent. 59); (2) Judge Cleland's February 12, 2007, order granting Trans Union's dispositive motion (Doc. Ent. 66); (3) Trans Union's November 28, 2007, statement of fees and expenses (Doc. Ent. 86); and (4) the 2007 Economics of Law Practice Survey.  Hrg. Trans. at 82-83. Plaintiff's counsel, attorney Bramlage, argued that Trans Union had not met this burden.  Hrg. Trans. 11-21, 88.

**e.**    In preparation for the January 17th hearing, attorney Parker filed a witness list (Doc. Ent. 83), noting that plaintiff intended to call himself and his wife at the evidentiary hearing.  It appears that plaintiff was not subpoenaed to testify.  Hrg. Trans. at 44.  In any event, although

---

and baselessness of allegations in the complaint when it was filed, and therefore, acted in bad faith."  *Lewis*, 2006 WL 2861059, *4.

[25]"Mayle and Krohn & Moss acted unreasonably in filing this action because they knew (or should have reasonably known) that the claims against Defendants were frivolous. Prior to the filing of this action, both Mayle and Krohn & Moss had documentation that the Loan was dispersed to Mayle's student account with Nova."  *Mayle v. Equifax Information Services, Inc.*, 2006 WL 398076, *2 (N.D.Ill. Feb. 14, 2006).  "Therefore, under § 1681n(c), as well as 28 U.S.C. § 1927, defendants are entitled to fees."  *Mayle*, 2006 WL 398076 at *2.

[26]"An award under 15 U.S.C. § 1681n(c) is also required in relation to DeBusk's claim against Guglielmo under the Fair Credit Reporting Act. DeBusk alleged that Guglielmo violated 15 U.S.C. § 1681b by obtaining DeBusk's consumer report without permissible purpose. As with his claim against Capital One, DeBusk failed to explain the basis for this allegation or offer any supporting evidence, and he ultimately dismissed the claim with prejudice after Guglielmo fully briefed a motion for summary judgment."  *DeBusk*, 2006 WL 3735963 at *5.

plaintiff and his wife were not present on January 17th, attorney Parker testified that he did not think plaintiff filed the lawsuit to harass anyone.  Hrg. Trans. at 81 (cross-examination).

Attorney Parker further testified that he did not think plaintiff caused this lawsuit to be filed in bad faith.  Hrg. Trans. at 81-82 (cross-examination).

Nonetheless, plaintiff certainly knew that defendant Harley Davidson had mistakenly credited his account as paid off prior to filing the complaint against Trans Union.  Plaintiff admitted that he was aware that Harley Davidson must have made a mistake regarding his account, because he knew he had not yet paid off his account in full.  Doc. Ent. 33-3 at 7.  After he received the refund check, he applied to transfer title in the bike to his wife.  Doc. Entries 33-3 at 8, 33-5 at 3, 33-7.  The bike was then sold for $14,000, and the proceeds were deposited in plaintiff's bank account.  Doc. Ent. 33-3 at 4.

Harley Davidson contacted plaintiff.  Doc. Ent. 33-3 at 10; Doc. Ent. 33-5 at 4 ¶ 4.  On or about November 25, 2004, plaintiff made a payment in the amount of $1,888.35.  Doc. Ent. 34-5 at 8.  Plaintiff also claims to have made payments in the amounts of $400.00 (Dec. 4, 2004); $250.00 (Feb. 2, 2005); $250.00 (Mar. 16, 2005); $335.00 (Apr. 16, 2005); and two payments of $335.35 (May 4, 2005 & June 8, 2005).  Doc. Ent. 34-5 at 8.  If plaintiff had legitimately felt that his account had been paid in full, then he would not have been so cooperative.

It is also apparent that plaintiff acted in bad faith in bringing this action against Trans Union, because he knew that Trans Union did not commit any of the violations he alleged in his complaint.  Plaintiff admittedly did not believe that his loan was actually paid off.  Doc. Ent. 33-3.  As previously noted, "[t]he term 'bad faith,' as it is ordinarily used in the attorney's fee context, requires a showing either that the party subjectively acted in bad faith-knowing that he

28

had no viable claim-or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Ryan*, 2001 WL 185182, *5. When the loan became delinquent, Harley Davidson reported the account to the credit reporting agencies. Doc. Ent. 33-5 at 4 ¶ 5. This was done so that Harley Davidson could recover the money plaintiff rightfully owed. In *Ryan*, the Court's assessment of attorney fees to plaintiff himself was not based upon the filing of the complaint, because the court determined that the plaintiff probably did not understand the baselessness of the claim at the time the complaint was filed. *Ryan*, 2001 WL 185182 at *5. Here, by contrast, the plaintiff was well aware that the claim was without foundation because he knew that Harley Davidson had mistakenly applied a payment to his account, Doc. Ent. 33-3 at 7, 11. Thus, imposing attorney fees under Sections 1681n(c) and 1681o(b) is entirely appropriate against plaintiff, because he knew of the baselessness of the allegations in the complaint when it was filed, and, therefore, acted in bad faith.

   For these reasons, plaintiff should be held liable under § 1681 for at least a portion of Trans Union's attorney fees.

**6.     The outer range of defense counsel's billing rate appears to be high.**

   As previously noted, Trans Union has filed an itemized statement of attorneys' fees and expenses. Doc. Ent. 86. The statement represents activity from December 1, 2005 - September 28, 2007. It totals $85,864.00, comprised of $82,875 in total fees[27] (for 459.70 total hours of work) and $2,989 in total expenses.[28] Doc. Ent. 86-2 at 2, 32. During closing arguments,

---

[27]According to the statement, only $76,967.50 has been billed out. Doc. Ent. 86-2 at 32.

[28]Apparently, a $12.72 credit for copies made on July 20, 2006, should be applied to this total. Doc. Ent. 86-2 at 32.

counsel for Trans Union argued that "the fee submitted by TransUnion as requested by this Court by an officer of this Court are reasonable under the circumstances and were incurred due to this claim which lacked any merit from the beginning." Hrg. Trans. at 84.

As an initial matter, two objections made during the evidentiary hearing must be addressed. First, opposing counsel challenged the Court's consideration of the itemized statement, because Trans Union "ha[d] no person here in order to claim, as the custodian of records that those are accurate and truthful. And absent that he can't put in those records regarding attorney fees." Hrg. Trans. at 14. *See also* Hrg. Trans. at 14, 17-18. Even though Trans Union did not produce a witness to testify that the itemized statement of attorney fees qualifies as record of regularly conducted activity as set forth in Fed. R. Civ. P. 803(6),[29] defense counsel Christopher T. Lane attested to the accuracy of the statement when it was filed. Doc. Ent. 86 at 1. I do not see any purpose to be served by putting a witness on the stand to testify that these are business records, as defense counsel has already attested to their accuracy.

Second, in his closing argument, counsel for Trans Union offered as an exhibit the State Bar of Michigan 2007 Economics of Law Practice Survey.[30] Hrg. Trans. at 83. Attorney

---

[29]"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." Fed. R. Evid. 803(6) ("Records of Regularly Conducted Activity.").

[30]It should be noted that it appears these results are preliminary. *See* www.michbar.org.

Bramlage argued that this survey should not be admitted, because it does not comport with Fed. R. Evid. 803(8). Hrg. Trans. at 88. Any resistance to this Court's consideration of the survey is tempered by the fact that, on several occasions, this Court has stated, "[d]istrict courts have relied on the State Bar of Michigan 2003 Economics of Law Practice survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice." *Baskin-Robbins Franchised Shops, L.L.C. v. Livonia Ice Cream No. 809, Inc.*, 2007 WL 4181422, *2 (E.D.Mich. Nov. 27, 2007) (Cleland, J.); *Harhara v. Norville*, 2007 WL 2952394, *2 (E.D.Mich. Oct. 9, 2007) (Cleland, J.) (same); *Meier v. Green*, 2007 WL 2909418, 2 (E.D.Mich. Oct. 5, 2007) (Cleland, J.) (same); *Gomez v. Allied Interstate, Inc.*, 2007 WL 2710390, *2 (E.D. Mich. Sept. 13, 2007) (Cleland, J.) (same); *PML North America, LLC v. ACG Enterprises of NC, Inc.*, 2007 WL 925627, *2 (E.D.Mich. Mar. 28, 2007) (Cleland, J.) (same).

That being said, to the extent plaintiff is challenging the reasonableness of the fees sought, at least one court has stated: "If bad faith and a purpose of harassment are present under 15 U.S.C. § 1681n(c) . . . , fees and costs may be award[ed] as long as the movant demonstrates that they are reasonable in amount." *DeBusk*, 2006 WL 3735963 at 6. "Reasonable fees are those that would normally be billed to a paying client." *Id*. (citing *Mayle v. Equifax Info. Servs., Inc.*, 2006 WL 398076, at *2 (N.D.Ill. Feb. 14, 2006)). "'The defendants bear the burden of demonstrating that their request for fees is reasonable, and must submit evidence supporting the hours worked and rates claimed.'" *Id*. (quoting *Mayle*, 2006 WL 398076 at *2).

Therefore, the Court should consider whether defendant Trans Union has met this burden. Defendant Trans Union's counsel sees reimbursement at an hourly rate of between $150 - $230 for attorneys with years of experience up to twenty five years and between $75 -$100 per

paralegal or legal assistant. Doc. Ent. 86. According to the survey, the 50th percentile for a litigation firm's standard hourly billing rate is $195. Also, the hourly billing rate for an attorney with 20 to 29 years in practice is $200 and for an attorney with less than five years in practice is $175. Furthermore, the 50th percentile for staff billing rates was between $75-$85 for a paralegal and $47.50-$85 for a legal assistant. Therefore, a cursory analysis indicates that the top range of defense counsel's billing rate is high.

The Court should also consider the size and location of defense counsel's law firm. The law firm of Schuckit & Associates, P.C. employs eight attorneys. *See* www.schuckitlaw.com. It appears from the survey that the hourly billing rate for a firm size of 3 to 6 attorneys is $182.50. The hourly billing rate for an office located in downtown Detroit is $222.50 (Trans Union's counsel is located in Indianapolis, Indiana), while the hourly billing rate for an office located in Oakland County (where Trans Union's local counsel is located), is between $200-$210.[31] Here too, a cursory analysis of the portions of the survey provided to the Court indicates that the top range of defense counsel's billing rate is high.

Once the Court determines the appropriateness of the hourly rates sought, it should also consider the reasonableness of the amount of hours worked. However, in the absence of an argument from plaintiff that the hours represented are unreasonable, the Court should rely on Trans Union's counsel statement that "[t]he undersigned counsel for Trans Union attests to the accuracy of the Statement and states that all such fees and expenses were necessarily incurred in this action." Doc. Ent. 86 at 1.

_____

[31]Counsel for Trans Union also provided the billing rates by field of practice. Trans Union Hrg. Ex. 1.

**F.**     **Defendant Trans Union's Motion Should Be Granted in Part and Denied in Part.**

Based upon the evidence taken at the January 18, 2008, hearing, I make the following

findings of fact:

1.      Attorney Parker was a credible witness.

2.      Plaintiff did not provide attorney Parker with correct information prior to the filing of the lawsuit.

3.      Attorney Parker prepared the complaint in reliance upon the information provided by plaintiff.[32]

4.      Had plaintiff provided correct information, attorney Parker would have recommended that the case not be filed.[33]

5.      Plaintiff's deposition testimony is inconsistent with the information given to attorney Parker prior to the filing of this case.

6.      Following the deposition, attorney Parker recommended that the case be settled.[34]

7.      Plaintiff declined to follow attorney Parker's recommendation at that time.

Accordingly, I make the following conclusions of law:

1.      Trans Union is entitled to an award for attorney fees.

2.      Attorney Parker should not be held personally liable under 28 U.S.C. § 1927.

3.      Plaintiff should be held liable under 15 U.S.C. § 1681.

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS:**

---

[32]Attorney Parker "had filed their case believing them[.]" Hrg. Trans. at 74 (cross-examination).

[33]"Q: Had [plaintiff] told you that at the beginning that there was one payment that was returned and one payment that was made, would that have effected your decision to take this case?  A: Yeah[.]" Hrg. Trans. at 75 (cross-examination).

[34]Hrg. Ex. 10 (May 17, 2006, letter).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/29/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on January 29, 2008.

s/Eddrey Butts
Case Manager