**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIAM O'CONNOR,

       Plaintiff,

v.                                                      Case No. 05-cv-74498

TRANS UNION, LLC, and
HARLEY-DAVIDSON CREDIT CORP.,
d/b/a HARLEY-DAVIDSON CREDIT

       Defendants.

                                             /

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS,
ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND
GRANTING IN PART AND DENYING IN PART DEFENDANT'S "MOTION FOR
ATTORNEY'S FEES AND EXPENSES"**

On January 29, 2008, Magistrate Judge Paul K. Komives issued a Report and Recommendation ("R&R"), in which he recommended that Defendant Trans Union's "Motion for Attorney Fees and Expenses Pursuant to 15 U.S.C. § 1681n(c), § 1681o(b), and 28 U.S.C. § 1927" be granted in part and denied in part. Specifically, Magistrate Judge Komives recommended that the motion be granted as to Plaintiff William O'Connor, but denied as to his former counsel, Brian Parker. On February 2, 2008, Plaintiff filed his timely objections to the R&R. Trans Union filed its response to the objections on February 22, 2008. Having reviewed the filings, the court will reject Plaintiff's objections, adopt the R&R, and grant in part and deny in part Trans Union's motion for attorney fees.

## I.  BACKGROUND

The facts are uncontested.  On April 15, 2000, Plaintiff financed the purchase of a motorcycle with a loan from Defendant Harley Davidson Credit ("HDC").  For approximately three years, Plaintiff made regular payments on the loan.  During June 2003, HDC mistakenly applied a payment of $7,983.23 to Plaintiff's account.[1]  Plaintiff then sought and received a release of lien from HDC.

After discovering its error in 2004, HDC attempted to contact Plaintiff to secure payment.  When these efforts failed, HDC wrote off the loan as bad debt and notified the credit bureaus of the write-off.  The Defendant credit bureaus then listed the transaction on Plaintiff's credit report, negatively affecting his credit rating.  In November of 2004, Plaintiff agreed to continue making payments, but has failed to make any payments since January 2006.

On November 30, 2006, summary judgment was granted in favor of Defendant HDC, and Trans Union and Equifax were dismissed.[2]  After some procedural maneuvering, Trans Union's dismissal was converted to a summary judgment.  (*See* 2/12/07 Order at 5.)  Subsequently, on February 26, 2007, Defendant Trans Union brought its present motion for attorney fees and costs.  In an Opinion and Order dated May 24, 2007, the court denied Trans Union's motion in part, as to Plaintiff's current

---

[1] The payment was actually made by Plaintiff's father, also named William O'Connor, in satisfaction of a separate loan.  When HDC misapplied this payment, it resulted in the inaccurate appearance that Plaintiff's loan was paid in full.

[2] Plaintiff did not oppose Trans Union's and Equifax's Motions for summary disposition and his claims were dismissed against those defendants.

counsel, Donald Bramlage, and referred the remaining issues, as to Plaintiff and Mr. Parker, to Magistrate Judge Komives.

For the reasons stated below, the court agrees with the R&R and overrules the Plaintiff's objections. The court will adopt the Magistrate Judge's recommendation to grant Trans Union's motion as to Plaintiff and deny the motion as to Parker.

## II. STANDARD

### A. Review of Reports and Recommendations

The filing of timely objections to a Magistrate Judge's R&R requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). See *United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context. A party who files timely objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors

immediately." *Walters*, 638 F.2d at 949-50.  The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), a habeas corpus case.  The Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues--factual and legal--that are at the heart of the parties' dispute."  *Id.* at 147 (footnote omitted).

Further, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Federation of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

### B.  15 U.S.C. § 1681n(c), § 1681o(b) and 28 U.S.C. § 1927

Trans Union brings its motion under 15 U.S.C. § 1681n(c), 15 U.S.C. § 1681o(b), 28 U.S.C. § 1927, asserting that Plaintiff and both his present and former attorneys knew that Plaintiff's lawsuit was frivolous and initiated or continued the lawsuit for an improper purpose.

Under the general American Rule, unless Congress provides otherwise, parties to litigation are to bear their own attorney fees.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("Unlike Britain where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees.").  Attorney fees are available, in certain circumstances, under 15 U.S.C. § 1681n(c) and 15 U.S.C. § 1681o(b), which contain identical fee-shifting provisions.  Specifically, §§ 1681n(c) and 1681o(b) provide:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing

> party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681n(c); 15 U.S.C. § 1681o(b).

Reasonable costs and attorney fees are also available under 28 U.S.C. § 1927 when an attorney or party "so multiplies the proceedings in [a] case unreasonably and vexatiously." 28 U.S.C. § 1927. The Sixth Circuit has construed "unreasonably and vexatiously" to include conduct where "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Jones v. Cont'l Corp.,* 789 F.2d 1225, 1232 (6th Cir. 1986).

> [T]he application of § 1927 is warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *In re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). However, the attorney's misconduct, while not required to have been carried out in bad faith, must amount to more than simple inadvertence or negligence that has frustrated the trial judge.

*Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir. 1996). However, "[a]n attorney [or party] is liable under § 1927 solely for excessive costs resulting from the violative conduct." *Ridder v. City of Springfield,* 109 F.3d 288, 299 (6th Cir. 1997).

### III. OBJECTIONS

Plaintiff makes five objections to the Magistrate Judge's report and recommendation. After making a *de novo* review of each objection and its underlying facts, the court will reject Plaintiff's objections and adopt the Magistrate Judge's report.

5

## A. Objection # 1

Plaintiff claims that the Magistrate Judge erred in admitting testimony from former attorney Parker. (Pl.'s Obj. at 2.) Plaintiff alleges that his communications with Parker are protected by the attorney-client privilege, and are thus inadmissible. (*Id.*) The Magistrate Judge overruled Plaintiff's objection reasoning that Plaintiff waived the privilege in his response brief when he alleged that, "the worst that could be said is that Plaintiff followed Mr. Parker's advice." (R&R at 12) The court agrees.

The Supreme Court has recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *In re Grand Jury Subpoenas,* 454 F.3d 511, 519 (6th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Its purpose "is to ensure free and open communications between a client and his attorney." *Id.* (citations omitted). The disputed statements fall squarely within this privilege. The Magistrate Judge ruled, however, that Plaintiff waived this privilege by Bramlage's statement, in his response brief, that Plaintiff simply followed Parker's advice. This statement places Parker's advice, and the conversation between Plaintiff and Parker, in controversy.

In his objection, Plaintiff argues that because the pleading was drafted and signed by attorney Bramlage, and not Plaintiff, its allegations could not constitute a waiver of the privilege by Plaintiff himself. This objection cannot be sustained.[3] Plaintiff's argument fails to recognize that "statements of an attorney that are directly

---

[3] Under Bramlage's reasoning, if Plaintiff filed suit against Parker, the attorney-client privilege would prevent Parker from disclosing his communications with Plaintiff to defend himself so long as it the allegations were drafted and signed by an attorney and not Plaintiff.

6

related to the litigation at hand have been held to be within the attorney's scope of authority and binding on the client." *United States v. Johnson*, 752 F.2d 206, 210-11 (6th Cir. 1985) (citing *United States v. Mayes*, 512 F.2d 637, 649 (6th Cir. 1975), *cert. denied*, 422 U.S. 1008 (1975)). The allegations contained in the Plaintiff's pleadings are the Plaintiff's allegations, despite the fact that they were drafted by an attorney

The Magistrate Judge correctly found that, "plaintiff's allegation . . . is a waiver of the attorney client privilege to the extent that plaintiff himself is alleging that privileged communications illustrate a shift in blame from plaintiff to his former attorney." (R&R at 12) The court rejects Plaintiff's first objection.

### B. Objection #2

Plaintiff also raises a hearsay objection to the admission of the communications between Plaintiff and Parker. (Pl.'s Obj. at 3) This objection also must fail. The Magistrate Judge stated that, "I overruled these objections, because I intended to consider the information elicited at the hearing not for the truth of the matter asserted but for the effect any such information may have had on the timing of attorney Parker's actions during the time he represented plaintiff." (R&R at 14) In his objection, Plaintiff merely alleges that, "it is clear that these communications were introduced for the purpose of proving the truth of the matter - that the Plaintiff caused the action to be filed in bad faith or for purposes of harassment." (Pl.'s Obj. at 3) Plaintiff fails to provide any legal or factual support for his argument that the Magistrate Judge considered the statement to prove the truth of the matter asserted or for any purpose other than that which he explained. As stated previously, an "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply

7

summarizes what has been presented before, is not an "objection" as that term is used in this context.

Moreover, a statement is not hearsay if "[t]he statement is offered against a party and is . . . the party's own statement." Fed. R. Evid. 801(d)(2). Here, the challenged statements are party admissions by Plaintiff which were offered against him and consequently simply do not constitute hearsay. The objection is therefore overruled.

### C. Objections #3 and #4

In his third objection, Plaintiff argues that the record is devoid of evidence that Plaintiff acted in bad faith or for purposes of harassment.[4] Plaintiff's fourth objection states that, alternatively, if Plaintiff's hearsay and attorney-client privilege objections are sustained, there is no evidence in the record that Plaintiff acted in bad faith or for purposes of harassment. On the contrary, and without regard to the court's resolution of Objections 1 and 2, the record is replete with indications of Plaintiff's bad faith. As the Magistrate Judge found, Plaintiff was fully aware that he did not pay off his obligation on the loan. Despite this knowledge and his awareness of HDC's mistake, he requested and received a release of lien from HDC. Subsequently, he transferred ownership of the motorcycle in a further effort to avoid his obligation. Subsequently, Plaintiff brought suit alleging that Defendants furnished "false debt" information, despite his admitted knowledge of the existence of the debt and the accuracy of the information provided by Defendants. The Magistrate Judge concluded that "[P]laintiff acted in bad faith in bringing this action against Trans Union, because he knew that Trans Union did

---

[4] Plaintiff's third objection apparently assumes that the court will reject Objections 1 and 2.

not commit any of the violations he alleged in his complaint. Plaintiff admittedly did not believe that his loan was actually paid off." (R&R at 28.) The court agrees. Based on the evidence before the court, the court agrees with the Magistrate Judge that Plaintiff brought this action in bad faith in an attempt to exploit a perceived loophole in the system. Plaintiff's deposition reveals that he knew at all times that his debt was not paid off and he barely tried to correct HDC's error, contrary to the assertions made in the complaint.[5] Plaintiff's third and fourth objections are accordingly rejected.

### D. Objection #5

In his fifth objection, Plaintiff objects to the admission of Trans Union's billing statements on the basis of hearsay. Specifically, Plaintiff claims that the Magistrate Judge's decision to admit the statements was error due to lack of adequate foundation. Plaintiff would require the custodian of the records to take the stand and testify that the billing statements are business records made in the course of regular business activity. The Magistrate Judge stated that, "I do not see any purpose to be served by putting a witness on the stand to testify that these are business records, as defense counsel has already attested to their accuracy." (R&R at 30) The court agrees and rejects the objection.[6]

---

[5] Indeed, as argued at the evidentiary hearing, Plaintiff continued his bad faith by asserting to the court in a July 8, 2006 letter, later provided to counsel, that he made reasonable efforts to correct HDC's error through "at least six letters and phone calls." (Pl.'s Hrg. Ex. 12.) This assertion is contrary to Plaintiff's sworn deposition testimony. Further, Plaintiff's letter contends that Defendants' actions negatively impacted his credit history, resulting in Plaintiff obtaining a high rate mortgage loan, which is also contrary to Plaintiff's deposition testimony.

[6] The court will not, however, award all of the requested fees, but will instead perform a "lodestar" analysis.

9

The court thus finds that all of Plaintiff's objections are without merit.[7] The substance of the R&R is therefore adopted and Plaintiff will be held liable for Trans Union's reasonable attorney fees. The R&R did not make a *specific* recommendation as to an amount of reasonable fees and the court will conduct its own analysis to determine the amount to award.

## IV.  MEASUREMENT OF REASONABLE ATTORNEY FEES

Trans Union seeks $93,070.00 in attorney fees and $4,400.33 in costs in a total amount of in attorney fees. After reviewing the September 28, 2007 submission of itemized fees and the February 8, 2008 supplemental submission, the court will impose a reduced attorney fee award.

### A.  Standard

The "lodestar" approach is the proper method for determining the amount of reasonable attorney fees. *Id.* at 432; *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983)). A court determines the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. *Hensley*, 461 U.S. at 433-34. "The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed." *Id.* That amount

---

[7]The court also reject's Plaintiff's request that the court conduct its own evidentiary hearing. Plaintiff provides no factual or legal support for this request and the court denies it.

can then be adjusted based upon twelve factors bearing on reasonableness.[8] *Id.* at 430 n.3.

## B. Reasonable Hourly Rate

A reasonable hourly billing rate is generally calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). "[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 896 n.11. An attorney fee award must be "adequate to attract competent counsel, but . . . not produce windfalls to attorneys." *Id* (internal quotations and citations omitted).

In calculating a reasonable hourly rate, the court considers "prevailing market rates in the relevant community" of metro-Detroit, Michigan. *Id.* at 897; *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citations omitted) ("[W]hen a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by the lawyer primarily in an alien locale of the court in which the case is pending, the court should deem the 'relevant community' for fee purposes to constitute the legal community within that court's territorial jurisdiction.") For guidance in determining a reasonable hourly rate, Trans Union has submitted the State

---

[8] Once the lodestar is calculated, the fee may be adjusted in consideration of the following twelve factors: (1) time and labor, (2) difficulty of the case, (3) skill necessary, (4) the extent the attorney is precluded from working on other matters, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) the time limitations, (8) the amount involved and the results obtained, (9) the attorney's experience, reputation, and ability, (10) the undesirability of the case, (11) the nature and length of the attorney-client relationship, and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

Bar of Economics 2007 Economics of Law Practice Survey. District courts have relied on the State Bar of Michigan 2003 Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice. *See Lamar Adver. Co. v. Charter Twp. Of Van Buren*, 178 F. Appx. 498, 501-02 (6th Cir. 2006).

Trans Union seeks to recover attorney fees for hourly rates ranging from $75 for a legal assistant to $230 for an attorney with 25 years of experience. Although the Magistrate Judge was inclined to find these rates a bit high, the court finds they are "in line with those prevailing in the community" for this type of litigation. *Blum,* 465 U.S. at 897. Additionally, these rates are comparable to other fee awards granted in this district. *See Darbyshire v. Garrison*, No. 04-72272, 2006 WL 581032 (E.D. Mich. Mar. 8, 2005) (finding reasonable attorney hourly rates of $200 and $250); *Disabled Patriots of Am. v. Romulus Nights Inc.*, No. 04-60258, 2005 WL 3132206 (E.D. Mich. Nov. 22, 2005) (awarding attorneys' fees based on rates ranging from $188-$290); *Fuhr v. Sch. Dist. of Hazel Park*, 131 F.Supp. 2d 947 (E.D. Mich. 2002) (finding reasonable the requested $275 hourly rate).

### C. Number of Hours Expended

After carefully reviewing the affidavits and comprehensive time sheets, the court finds that the number of hours Trans Union's attorneys have requested in this matter is excessive.[9] This case has been, quite simply, over-litigated, particularly after Plaintiff's

---

[9]The Magistrate Judge stated that "in the absence of an argument from plaintiff that the hours represented are unreasonable, the Court should rely on Trans Union's counsel statement that '. . . all such fees and expenses were necessarily incurred in this action.'" (R&R at 32.) Because Plaintiff did not specifically so argue, Trans Union argues the court should just blindly accept its statement that the sought hours are

12

deposition where it became clear to everyone that this case should, and ultimately would, end. It may be that more work was expended due to Plaintiff's unreasonable refusal to end this case, but in reviewing the entries the court does not find this to be likely. Rather, it appears to the court that Trans Union's attorneys over-worked this case.

For example, Trans Union spent over ten hours researching, preparing for, and attending a status conference and hearing regarding Parker's request to withdraw as counsel. It is unclear to the court why Trans Union needed to substantially research issues related to *Plaintiff*'s counsel's withdrawal. Similarly, Trans Union devoted over thirty hours in its relentless pursuit of an order converting its dismissal to a summary judgment,[10] and over fifty hours researching, preparing for, and attending the evidentiary hearing at which counsel presented no witnesses, conducted no cross-examination, and, indeed, barely spoke.[11] Peppered throughout the itemizations are countless entries for preparing and reviewing communications (emails, faxes, letters and telephone conferences) with co-counsel, opposing counsel and the court's staff. While the court expects to see a relatively large number of such communications, there are an

---

reasonable. Because even a cursory review of the itemizations reveals that the sought hours are *not* reasonable, the court rejects this argument and will, consistent with the relevant case law, review the itemization to ensure that the hours recorded are reasonable.

[10]Despite the fact that Trans Union was successful in its motion, the court has never been persuaded that there is any practical or substantive difference, particularly under the procedural posture of this case, between a dismissal with prejudice and a summary judgment award. (2/27/07 Order at 4.)

[11]This is in addition to the over-fifty hours of time spent preparing Trans Union's motion for sanctions and reply brief.

inordinate and unreasonable amount of them in this case.[12]  They are yet another
example of the excessive billing which appears in the itemizations submitted to the
court.

Determining reasonable attorney fees is not an exact science, but the court is left
with no choice but to dramatically reduce the attorney fee award in this case.  The
itemizations seek, collectively, over 500 hours worth of time on what should have been,
at most, a 200 hour case.  Stated otherwise, the court finds that only forty percent of
Trans Union's fees are reasonable.  The court will therefore award attorney fees in the
amount of $37,228, forty percent of $93,070.00.

### D.  Associated Costs

In the fee affidavits, Trans Union also requests costs other than attorney fees
incurred.  Trans Union submits that it incurred a total of $4,400.33, including charges for
certified mail postage, car rentals, gasoline, hotel rooms, meals, and copies.  The court
finds that most of these additional legal costs were reasonably and directly incurred as a
result of Plaintiff's bad faith lawsuit.  The only except is the $540.39 sought for "Hotel
during travel to and from Detroit for Hearing on Trans Union's Motion for Attorney Fees
and Expenses."  (2/08/08 Itemization, Entry dated 1/16/08.)   No explanation is provided
for this excessively high rate for one night's hotel stay for one attorney, and the court
will reject it in its entirety.  The total costs will therefore be reduced to $3859.94.

---

[12]Perhaps some of these communications are due to a certain level of acrimony
the court perceives between Trans Union's counsel and both Parker and Bramlage.
Plaintiff, however, should not be required to reimburse fees attributed not to a defense
of Plaintiff's case but, more accurately, to Trans Union's antipathy toward counsel.  It is
also possible that Trans Union has employed a deliberate strategy of zealously over-
defending these types of claims.  Again, Plaintiff should not be required to pay fully for
Trans Union's global litigation strategy of Fair Credit Reporting Act claims.

## V. CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff's Objections [Dkt. # 95] are OVERRULED and the Magistrate Judge's Report and Recommendation [Dkt. # 94] is ADOPTED AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendant Trans Union's "Motion for Attorney Fees and Expenses Pursuant to 15 U.S.C. 1681n(c), 1681o(b), and 28 U.S.C. 1927" [Dkt. # 70] is GRANTED IN PART and DENIED IN PART. IT IS GRANTED with respect to Plaintiff William O'Connor and DENIED with respect to Attorney Brian Parker. Plaintiff is DIRECTED to pay Defendant Trans Union $37,228 in reasonable attorney fees and $3,859.94 in reasonable costs incurred.

    S/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: November 13, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 13, 2008, by electronic and/or ordinary mail.

    S/Lisa G. Wagner
    Case Manager and Deputy Clerk
    (313) 234-5522.

S:\Cleland\JUDGE'S DESK\C3 ORDERS\05-74498.OCONNOR.R&R.2.chd.wpd